**Deborah EDWARDS, Appellant,**

v.

**UNITED STATES POSTAL SERVICE, Anthony M. Frank, Postmaster General, Appellee.**

**No. 89–2215WA.**

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1990.

Decided July 23, 1990.

---

Priscilla Karen Pope, Fayetteville, Ark., for appellant.

Lori J. Dym, Washington, D.C., for appellee.

Before ARNOLD, Circuit Judge, BRIGHT and ROSS, Senior Circuit Judges.

ARNOLD, Circuit Judge.

Deborah Edwards filed this sex-discrimination claim against the United States Postal Service in the United States District Court for the Western District of Arkansas. She alleges that the Postal Service failed to transfer her from a carrier to a clerk position on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16. The Court ruled in favor of defendant, finding legitimate, non-discriminatory reasons for its employment action. Plaintiff now appeals the finding of the Court on the grounds it is clearly erroneous in light of the conflicting testimony on behalf of the defendant. We reverse.

I.

At the time relevant to this lawsuit, Ms. Edwards worked as a part-time letter carrier for the Postal Service in Springdale, Arkansas. Early in 1984, a clerk position became available. Ms. Edwards, along with three other postal employees, requested a transfer to this position. Plaintiff was the last of the four employees to put in her request and was the least senior of these employees in length of employment. The order of priority in both of these respects was Mr. Bollinger, Mr. Alderson, Mr. Murray, and Ms. Edwards. Mr. Bollinger was ultimately picked to fill this first clerk position. Plaintiff does not complain about this action. A second clerkship position then became available in late summer of 1984. Springdale Postmaster Spencer asked Mr. Alderson if he was still interested in transferring to a clerk position. Mr. Alderson replied he was not. Mr. Spencer then called Mr. Murray in from vacation to see whether he would like the position. Mr. Murray said he would not. Although Ms. Edwards was the next in line among the employees who had requested transfer, Mr. Spencer did not even contact her. Instead he went to the hiring register and chose a male part-time rural relief carrier—Mr. Bunch—who, unlike Ms. Edwards, had no prior clerking experience.

Ms. Edwards filed a complaint against the Postal Service, alleging Mr. Spencer had passed her over for the clerk position in the fall of 1984 on the basis of her sex.[1]

---

1. Ms. Edwards was appointed to a clerk position in 1985. In this case she seeks retroactive seniority and an injunction prohibiting future discrimination.

An investigation was held in 1985 by the Postal Service and the Equal Employment Opportunity Commission (EEOC). After a hearing in early 1987, an administrative law judge for the EEOC found that the plaintiff had established a *prima facie* case of sexual discrimination, but the Postal Service had demonstrated a legitimate non-discriminatory reason for the challenged employment decision—an alleged one-year residency requirement for all clerks. Plaintiff then appealed to the EEOC Office of Review and Appeals, which concluded that the Postal Service had not discriminated against plaintiff on the basis of her sex, in that she had not shown that the purported one-year requirement was a mere pretext for discrimination.

Plaintiff next brought this action alleging a violation of Title VII. She seeks an injunction prohibiting future unfair employment practices and modifying her seniority status. She also has requested attorney's fees and costs.

The District Court ruled in favor of the defendant. By agreement of the parties, it considered only documentary evidence. It found that Mr. Spencer had intended from the beginning to fill the challenged clerk position from the hiring register, unless persons who had previously requested transfers could force their way into the position using union pressure. The Court reasoned that this was a legitimate explanation for Mr. Spencer's actions, because Mr. Alderson and Mr. Murray were protected by the union, while plaintiff was not. The Court also noted that Mr. Spencer had mentioned the informal one-year residency requirement for transfer as an additional reason for not offering the transfer to plaintiff.

## II.

Ms. Edwards now appeals the ruling of the District Court. She argues that the Court erred in finding that defendant had legitimate, non-discriminatory reasons for not offering the clerk position to her. Plaintiff urges that the defendant's chief witness offered different, often contradictory, explanations for his challenged de-

cision every time his explanation was recorded. We agree with the plaintiff that the Court erred in its ruling.

We review the finding of the District Court, like any other finding of fact, under the clearly-erroneous standard. See generally *U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). But because the Court did not hear the testimony of live witnesses, however, we do not afford its findings the special weight that comes from the chance to observe the demeanor of witnesses. Still, we must affirm if the District Court's findings are plausible. After applying this exacting standard, we are confident that the finding is unsupportable. The finding of the Court is clearly erroneous—after looking at all the evidence, we are "left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quotation omitted). We can find no legitimate non-discriminatory reason for the failure to transfer Ms. Edwards. This record reveals pretext, inconsistency, and contradictory explanations which change every time they are recorded. We set out a summary of the testimony below.

During the administrative investigation, Mr. Spencer claimed that he had denied Ms. Edwards the clerk position because her work performance needed improvement and she had not worked at the Springdale office for a full year. He also stated that Ms. Edwards and Mr. Clifford Jackson had requested transfer from a carrier to a clerk position, and that both were under consideration for transfer to the position ultimately filled by Mr. Bunch. He said that Ms. Edwards was never out of consideration for this position.

At the hearing held by the EEOC, Mr. Spencer testified that he did not offer the position to Ms. Edwards because she had not been in the Springdale Post Office for a full year. Here, however, he stated that Ms. Edwards was an excellent employee who had received awards for her job performance. In fact, at this proceeding the Postal Service stipulated that she was qual-

ified for a clerk position in 1984. Mr. Spencer further testified that he had never considered plaintiff for the clerkship position taken by Mr. Bunch. When cross-examined, he could recall neither why he had told the investigator that there were problems with plaintiff's work performance, nor why he said she had never been out of consideration for the job. Yet, he did not deny making either of those statements.

As for the evidence presented in the hearing on the one-year requirement that Mr. Spencer mentioned, the District Court summarized it as follows:

> None of the documentary evidence suggests the existence of a one-year residency requirement prior to transfer. Mr. Bollinger, who was offered a transfer from carrier craft to clerk craft, first requested the transfer within ninety days of his arrival at the Springdale office. At no time was he ever informed of the one-year residency rule. Mr. Murray, the second employee to be offered a similar transfer, testified that he had not heard of such a requirement until very recently (Exh. A–2, Tr. 70–75). The third employee transformed or offered a clerk position stated that he had never been made aware of a year's residency requirement (Exh. A–2, Tr. 79).

Memorandum opinion at 4.

During depositions taken for this Title VII action, Mr. Spencer changed his story again. Now, he explained that he had always intended to hire the clerk from the hiring register, not on the basis of requests, and that his fear of union protection of Mr. Alderman and Mr. Murray was the reason he had contacted them and not Ms. Edwards. His testimony during deposition not only contradicts his previous two explanations, but it is internally inconsistent. At the outset of the depositions, he denied ever having offered any carrier the clerk position filled by Mr. Bunch because he had always intended to fill it from the hiring register. Deposition at 7–8. Then upon being questioned about his discussions with Mr. Alderman and Mr. Murray, he stated he made the decision to hire from the register after learning that these men would not force their way into the position for medical reasons. Id. at 11–12, 17, 29. Then upon further questioning, he could not recall whether Murray ever had a medical problem; Spencer only knew that Murray had asked for a transfer. Id. at 13. He explained that both men were union employees and had a much better chance of forcing their way into a clerk position for medical reasons than a part-time employee (like Ms. Edwards), although a part-time employee could also force a transfer. Further, he testified that he knew Ms. Edwards had been ill during the summer of 1984, but he did not talk to her about her interest in a clerk position. Id. at 20–22. Upon further questioning he also again cited his informal one-year requirement for transfers and explained that Ms. Edwards had worked there for only seven months.

We cannot agree that Mr. Spencer's testimony supports the finding below. Nor do the other witnesses for the government add credence to the District Court's finding; their testimony seems to support a finding that all the explanations offered were really only a pretext for discrimination. Mr. Keck, the supervisor at the Springdale office, told the EEOC counselor that he knew Ms. Edwards wanted the clerk job, and he thought everyone in the office knew it. He said she was not transferred because her attendance needed improvement, and she had not been in the office long enough to receive consideration over the other carriers who had requested a transfer. At the hearing, however, Mr. Petrey, the Postal Service Representative, stipulated that Ms. Edwards's absence record was satisfactory. Further, Mr. Spencer testified he knew of only Mr. Bollinger, Mr. Alderson, Mr. Murray, Ms. Edwards, and Mr. Jackson requesting transfer and that Ms. Edwards was more senior to Mr. Jackson. Thus there were no carriers senior to her who wanted the transfer in the fall of 1984.

Ms. Propes, Supervisor of Delivery & Mails at Springdale, told the EEOC counselor that Mr. Bunch was chosen over Ms. Edwards because he was the better qualified and more reliable of the two. Then at the hearing, she testified that Mr. Bunch's

and Ms. Edwards's qualifications had not been compared for the position Mr. Bunch filled, and that she must have misunderstood the counselor's question. She also said that she didn't know that plaintiff had requested a transfer, nor why the Postmaster had not transferred Ms. Edwards if she had requested one.

In light of this record, filled with changing and inconsistent explanations, we can find no legitimate, non-discriminatory basis for the challenged action that is not mere pretension. The District Court's contrary finding, made on the basis of Mr. Spencer's third explanation—offered on the eve of trial, three years after the investigation of this incident—is clearly erroneous and cannot stand.

Accordingly, we reverse the judgment and remand to the District Court with instructions to enter judgment for plaintiff and to determine the appropriate remedy.